UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA SACCOMANO,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br><br>Defendant. | Case No. 18-cv-02624-JCS<br><br>**ORDER GRANTING MOTION FOR ATTORNEYS' FEES UNDER 42 U.S.C. § 406(b)**<br><br>Re: Dkt. No. 35 |

## I.  INTRODUCTION

Plaintiff Christina Saccomano's attorney Harvey Sackett moves for an award of attorneys' fees pursuant to 42 U.S.C. § 406(b) in this action for social security disability benefits, where Saccomano obtained a favorable result reversing the initial decision of Defendant Andrew Saul, Commissioner of Social Security (the "Commissioner"). The parties submitted supplemental briefing after the Court issued an order to show cause. For the reasons discussed below, the motion is GRANTED.[1]

## II.  BACKGROUND

The Court previously granted Saccomano's motion for summary judgment and remanded this case for further administrative proceedings, Order re Mots. for Summ. J. (dkt. 27),[2] which resulted in the Commissioner finding Saccomano disabled and entitled to past benefits totaling $125,893 as well as ongoing future benefits, *see* Apr. 14, 2020 Letter (dkt. 35-3) at 3. The parties stipulated to a fee award of $4,139.02 to be paid by the Commissioner under the Equal Access to Justice Act ("EAJA"). *See* dkts. 33, 34. Saccomano's counsel Harvey Sackett now moves for an

---

[1] The parties consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).
[2] *Saccomano v. Saul*, No. 18-cv-02624-JCS, 2019 WL 4751888 (N.D. Cal. Sept. 30, 2019).

award of $21,473.25 in attorneys' fees from Saccomano's past-due benefits pursuant to 42 U.S.C. § 406(b), which allows a court to award "a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits . . . for payment to such attorney out of, and not in addition to, the amount of such past-due benefits." 42 U.S.C. § 406(b)(1)(A).

Saccomano entered a fee agreement to pay Sackett "a fee no greater than 25% of the past-due benefits owed to [her]" if she "receive[d] a favorable decision at any time following an unfavorable or partially favorable administrative law judge decision either at any administrative level or at the judicial level." Fee Agreement (dkt. 35-4) at 1. The fee agreement provides no guidance as to the particular amount of fees that Saccomano would pay under those circumstances, except to restate the *maximum* limit provided by statute. Sackett's assertion in his motion that "Saccomano contracted with Sackett to pay 25% of past-due benefits," Mot. (dkt. 35) at 7, therefore did not accurately reflect the fee agreement. The Court ordered Sackett to show cause why his motion should be granted in the amount requested and to address how the Court should determine an appropriate award of fees under § 406(b) when the fee agreement provides no guidance beyond the terms of the statute. *See generally* Order to Show Cause ("OSC," dkt. 42). Sackett's response generally argues for the reasonableness of the amount of fees he seeks, and includes a declaration by Saccomano expressing her appreciation for Sackett's work, but does not address the core questions of whether the fee agreement provides any meaningful guidance, or how the Court should evaluate Sackett's request in the absence of such guidance. *See generally* Sackett OSC Response (dkt. 44).

The order to show cause also noted discrepancies in Sackett's description of an appropriate non-contingency hourly rate to be used as a benchmark, with references to such a rate in his motion ranging from $350 to $1,050 per hour. OSC at 2 n.1. Sackett argues in his response that a non-contingency rate of $688 is appropriate, corresponding to the ninety-fifth percentile of attorneys in San Francisco based on survey data. *See* Sackett OSC Response at 10–11. Sackett also submits a declaration by Saccomano expressing satisfaction with Sackett's representation of her and asking the Court to approve his request for fees. *See* Saccomano Decl. (dkt. 44-2).

The Commissioner, acting in a role "'resembling that of a trustee for the claimant[],'"

2

submitted a response to Sackett's motion describing the general framework for adjudicating motions for attorneys' fees under § 406(b) and noting that Sackett's requested amount of fees would represent an effective hourly rate of $1,050.04. *See generally* Comm'r's Response to Mot. (dkt. 37) (quoting *Gisbrecht v. Barnhart*, 535 U.S. 789, 798 n.6 (2002)). That response did not address the language of the fee agreement at issue. *See id.* In response to the Court's order to show cause, the Commissioner filed another response further addressing the framework for evaluating motions under § 406(b) and the amount that Sackett has requested here, but concluding that in the absence of caselaw on point, the Commissioner was "unable to provide any direct response to the Court's query" regarding fee agreements that do not provide for any particular amount of fees. *See generally* Comm'r's OSC Response (dkt. 46). The Commissioner "takes no position as to whether [Sackett's] fee request was 'reasonable.'" *Id.* at 5.

## III.   ANALYSIS

### A.   Legal Standard for Social Security Attorney's Fees

"Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Commissioner of Social Security may . . . certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits." 42 U.S.C. § 406(b). Courts must "review for reasonableness" fees sought under this statute, and may reduce an award of fees below the statutory ceiling based on factors including "the character of the representation," "the results the representative achieved," an attorney's responsibility for delay (which must be addressed "so that the attorney will not profit from the accumulation of benefits during the pendency of the case in court"), and whether the "benefits are large in comparison to the amount of time counsel spent on the case" (which "may require the claimant's attorney to submit . . . a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases"). *Gisbrecht*, 535 U.S. at 808–09; *see also Crawford v. Astrue*, 586 F.3d 1142, 1151 (9th Cir. 2009) ("The court may properly reduce the fee for

3

1  substandard performance, delay, or benefits that are not in proportion to the time spent on the
2  case."). In conducting that inquiry, courts must "respect the 'primacy of lawful attorney-client fee
3  agreements.'" *Crawford*, 586 F.3d at 1150 (quoting *Gisbrecht*, 535 U.S. at 1150).

4      In addition to the fees permitted under § 406(b), the EAJA, enacted in 1980, allows a party
5  who prevails against the United States in court, including a successful Social Security benefits
6  claimant, to receive an award of fees payable by the United States if the government's position in
7  the litigation was not "substantially justified." *Gisbrecht*, 535 U.S. at 796 (citing 28 U.S.C.
8  § 2412(d)(1)(A)). The burden of proving the substantial justification exception to the mandatory
9  award of fees under the EAJA lies with the government. *Love v. Reilly*, 924 F.2d 1492, 1495 (9th
10 Cir. 1991). In contrast to fees awarded under § 406(b), EAJA fees are based on the "time
11 expended" and the attorney's billing rate. 28 U.S.C. § 2412(d)(1)(B). The EAJA authorizes an
12 award of only "reasonable" attorneys' fees, and caps the rate at which fees can be awarded at $125
13 per hour, except that a court may authorize a higher rate based on special circumstances or an
14 increase in the cost of living. 28 U.S.C. § 2412(d)(2)(A). The Ninth Circuit has authorized a cost
15 of living adjustment based on the "CPI-U" consumer price index. *Thangaraja v. Gonzales*, 428
16 F.3d 870, 876 (9th Cir. 2005).

17     "Congress harmonized fees payable by the Government under EAJA with fees payable
18 under § 406(b) out of the claimant's past-due Social Security benefits in this manner: Fee awards
19 may be made under both prescriptions, but the claimant's attorney must 'refun[d] to the claimant
20 the amount of the smaller fee.'" *Gisbrecht*, 535 U.S. at 796 (quoting Act of Aug. 5, 1985, Pub. L.
21 No. 99-80, § 3, 99 Stat. 186 (1985)) (alteration in original). Accordingly, "an EAJA award offsets
22 an award under Section 406(b)," increasing "the amount of the total past-due benefits the claimant
23 actually receives . . . up to the point the claimant receives 100 percent of the past-due benefits."
24 *Id.* (citation, brackets, and internal quotation marks omitted).

    **B.**    **Sackett's Fee Agreement Provides No Guidance**

26     The Supreme Court's analysis in *Gisbrecht* was premised on a fee agreement in which the
27 plaintiffs "agreed to pay counsel 25 percent of all past-due benefits recovered." *Gisbrecht*, 535
28 U.S. at 797. Saccomano's agreement, in contrast, provides in relevant part only that she will pay

4

"a fee *no greater than* 25% of the past-due benefits owed to [her]." Fee Agreement at 1 (emphasis added). The fee agreement provides no further guidance on how the fee will be determined within that limit, which merely restates the "one boundary line" established by Congress in § 406(b). *See Gisbrecht*, 535 U.S. at 807. Unlike other fee agreements presented to this Court in Social Security cases, the agreement between Saccomano and Sackett does not explicitly vest authority to determine the amount of the fee in the attorney. *Cf. Gurzenda v. Saul*, No. 18-cv-0488-JCS, 2020 WL 5407998, at *1 (N.D. Cal. Sept. 9, 2020) (addressing a fee agreement granting counsel "the right . . . to ask the court to award as much as 25% of [the claimant's] past-due benefits"). In the absence of any evidence for a contrary interpretation—or indeed, any such argument, even after invitation in the order to show cause—the Court construes the fee agreement here as leaving for the Court determine on a blank slate what fee is reasonable, up to a limit of twenty-five percent of Saccomano's past-due benefits.

### C. Sackett Is Entitled to the Fees He Seeks

As a starting point, the relevant figure for the present analysis is the full $21,473.25 Sackett seeks to recover under § 406(b), without accounting for the earlier award under the EAJA. Sackett suggests that his request for $21,473.25 should be treated as effectively only $17,337.23, because Sackett will be ordered to refund the stipulated EAJA award to Saccomano.[3] Mot. at 2, 9; Sackett OSC Response at 1, 13. Such an approach either neglects the fact that Sackett has already *received* the EAJA award in addition to whatever amount will be awarded under § 406(b), or presumes—incorrectly—that the EAJA is intended to increase the amount that attorneys receive rather than offset the bills incurred by successful plaintiffs. Analyzing the reasonableness of a § 406(b) award only after subtracting any amount awarded under the EAJA would effectively unwind the refund process established by Congress and described in *Gisbrecht*, such that the

---

[3] Sackett's motion and OSC response in some instances erroneously reports the EAJA award as $4,139.92 rather than $4,139.02, Mot. at 12, Sackett OSC Response at 1, and his calculation of the difference between his requested § 406(b) award and the EAJA award is off by a few dollars regardless of whether it is based on the correct EAJA award or the erroneous amount stated in those instances. Because the Court rejects Sackett's premise of subtracting the EAJA award to determine an "effective" § 406(b) award, however, those small errors are not relevant to the outcome of the motion.

attorney recovers a greater-than-"reasonable" fee, and the claimant receives no benefit from the EAJA. The Court rejects Sackett's framework, and analyzes the appropriate award under § 406(b) without accounting for the separate award under the EAJA.

The $21,473.25 that Sackett seeks here is $10,000 less than the maximum one-fourth of Saccomano's $125,893 past-due benefits allowed under § 406(b). Sackett notes that he intends to seek $10,000 in fees under 42 U.S.C. § 406(a) at the administrative level, Mot. at 2 n.1., but the reasonableness of any such award by the Social Security Administration is not before this Court. In determining whether the $21,473.25 request is reasonable, the Court is mindful of *Gisbrecht*'s acknowledgment that contingent fee agreements for the maximum twenty-five percent of past-due benefits have become standard in Social Security disability litigation. *See* 535 U.S. at 803. And while reverting to a "lodestar" method of calculation based on a reasonable hourly rate—which *Gisbrecht* recognized as "'the guiding light of our fee-shifting jurisprudence'"—has some appeal in the absence of a more specific fee stated in the contract, *Gisbrecht*'s admonition that the "lodestar method was designed to govern imposition of fees on the losing party," and thus is not appropriate in assessing fees to be paid by an attorneys' client, remains applicable here. *See id.* at 801, 806 (quoting *Burlington v. Dague*, 505 U.S. 557, 562 (1992)). Even if a lodestar method were otherwise appropriate, it is difficult—if not impossible—to determine a customary hourly fee in a field of law where contingency fees are the overwhelming norm. *See id.* at 803; *see also, e.g.*, Comm'r's OSC Response at 3 ("From a cursory review of [Sackett's] website, it appears to indicate that he works exclusively on a contingency basis."). Evaluating Sackett's request against the

twenty-five-percent contingency fee typical of Social Security attorneys' fee agreements thus provides a better comparison in this context.

At only around seventeen percent of Saccomano's past-due benefits—significantly below the twenty-five percent typically provided by fee agreements in this field—Sackett's request for $21,473.25 is presumptively reasonable. The record does not reveal significant unwarranted delay or substandard performance on the merits of the case. To the contrary, Sackett ultimately obtained a wholly favorable result for his client. The Court also notes Saccomano's declaration stating her

satisfaction with the representation and her desire that Sackett's motion be granted.  *See* Saccomano Decl. ¶¶ 4–5.

The Court may also consider, "not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases." *Gisbrecht*, 535 U.S. at 808.  Sackett spent 20.45 hours litigating Saccomano's case in this Court, which is not an unreasonable amount of time, and works out to a rate of around $1,050 per hour if his request is granted in full.  That is a high number, but Sackett has submitted evidence that attorneys in the San Francisco area with his level of experience—in all fields, not specifically in the context of Social Security disability claims—on average bill $480 per hour, *see* dkt. 35-6, and awarding a little over twice that rate is not unreasonable in light of the contingent nature of the representation and Sackett's risk of recovering nothing if the case was unsuccessful.[4]  The Court is satisfied that the "benefits are [not so] large in comparison to the amount of time counsel spent on the case" to warrant a reduction in fees.  *See id.*

## IV.  CONCLUSION

For the reasons discussed above, the motion for attorneys' fees is GRANTED.  Sackett shall recover $21,473.25 from Saccomano's past-due benefits under § 406(b).  Upon receipt of such funds, Sackett is ORDERED to refund to Saccomano the previous award of $4,139.02 under the EAJA.  The Commissioner is ORDERED to disburse Saccomano's past-due benefits in a manner consistent with this order.

**IT IS SO ORDERED.**

Dated: October 6, 2020

JOSEPH C. SPERO
Chief Magistrate Judge

---

[4] Because, as discussed above, a true lodestar analysis is not appropriate in this context, the Court does not decide whether Sackett's submissions—which include neither a detailed description of how he spent his time nor rigorous evidentiary support for prevailing hourly rates—would be sufficient if the analysis turned primarily on those issues.  Under the circumstances of this case, however, Sackett's submissions are enough to satisfy the Court that no downward departure from his presumptively reasonable request is necessary.